**FILED**

NOV 0 7 2022

MICHAEL E. GANS
CLERK OF COURT

**COVER PAGE** *22-2718*

**UNITED STATES COURT OF APPEALS**

**FOR THE EIGHT CIRCUIT**

**THOMAS EAGLETON U. S. COURTHOUSE**

**111 SOUTH 10th STREET, ROOM 24. 329**

**ST. LOUIS, MISSOURI 63102**

**ANGELA SCHUNCEY RICHARDSON**

**PLAINTIFF - APPELLANT**

**v**

**WENDY KELLEY: STATE OF ARKANSAS;**

**COURTNEY PORCHIA, NURSE
(ORINALLY NAMED OF PORCHE, COURTNEY;)**

**ALEXZANDRIA COFEILD**

**DEFENDANT- APPELLES**

**RECEIVED**

NOV - 7 2022

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

# TABLE OF CONTENTS

- **COVER PAGE**

- **APPELLANT BACKGROUND OF THE CASE AND BRIEF**

- **PROCEEDINGS**

- **EXHIBITS**

- **CLOSING**

# UNITED STATES COURT OF APPEALS

## FOR THE EIGHT CIRCUIT

## APPEAL NO. 22-2718

ANGELA S. RICHARDSON                    PLAINTIFF-APELLANT

v

COURTNEY PORCHIA, et. al              DEFENDANT-APPELLES

## APPELANT BACKGROUND AND BRIEF

The Appellant "**Angela S. Richardson**" is currently housed at the McPherson Unit in Newport, Arkansas. On or around December 10, 2015 the **Appellant** was transferred to the Hawkins Unit for Women in Wrightsville, Arkansas. Upon her arrival at the Hawkins the **Appellant** noticed the paws in prison program for inmates. The **Appellant** immediately addressed her dog phobia to prison officials. She soon appeared before the Classification Committee. In which she addressed her dog Phobia again to Deputy Warden Tami Aikens. The **Appellant** asked to be transferred due to her phobia . **DENIED.**

A few weeks later Appellant sat at the table inside the secured barracks. She noticed officer Jane Doe and a **Nurse (Defendant Porchia)** watching her through the window. The officer beckon for the **Appellant** to come outside the secured door. The officer instructed security staff in the control booth to unlock the door. Plaintiff stepped outside the door into the small hallway. The officer asked **Appellant** about her written novels and how to go about purchasing copies. The **Appellant** briefly explained as the officer provided her with paper and pen to write the information down. The **Appellant** wrote (The Cries Behind Bars & Lyfe "n"

Tyme) down the titles and Amazon.Com as she thanked both of them for the support. The **Appellant** returned back to her barracks. The **Appellant** soon started to be called out to the Medical Department a number of times by **Defendant** (Officer) Cofield without a sick call request submitted in order to be seen. The **Defendant Cofield** abused her authority position in order to help **Defendant Porchia** personal desires for the **Appellant**.

On or around 01-23-2016 the **Defendant Porchia** and Cofield called the **Appellant** to medical. On this particular day Defendant Cofield heard that **Appellant** had on make-up and wanted to see **Appellant**. Upon **Appellant** arriving to medical without a sick call request. She no longer had on make-up. The **Defendant Porchia** neglected pregnant inmate Sally Cummingham who had to detach herself from a device that allowed her to listen to her baby's heartbeat. **Defendant Porchia's** attention was focused on the **Appellant**. The Appellant was about to leave in order to return to her barracks until, **Defendant Porchia** asked her to stay in medical. The **Appellant** did not know as to why **Defendant Porchia** asked her to stay. Reluctantly, **Appellant** stayed. However, in the midst of extended long hours of conversating with Defendants about **Appellant** former LGBTQ (Lesbian, Gay, Bisexual, Transgerder, Queer) night club, **Defendant Porchia** former lover Shalonda Johnson, and familiar friends. The **Appellant** expressed to **Defendant Porchia** that she was not familiar with her. The **Defendant Porchia** soon started inquiring to the Plaintiff as to who was taking care of her sexual needs and if she had a girlfriend? The **Defendant Porchia** told the Plaintiff that she wanted to take care of her sexual needs. She told **Appellant** to play things cool and that she would have her called back to medical.

(View amended Complaint Document #8-0,Date filed 01-13-2017)

On or around 1-24-2016, approximately 1:35 p.m. the **Appellant** was in fact called back out to medical by Cofield without a sick call request. Again, **Appellant** spent lengthy hours talking to both named Defendants. At some point Officer Coleman (who is not a party) stopped by and joined the conversations on her break. Officer Coleman who is also known for sexual favors of; unconstitutional violations as to inmates and staff misconduct.

(View Exhibit "Joinder" written by Inmate Joinder)

However, at some point the defendant Cofield left to get donuts. The **Appellant** was left alone with **Defendant Porchia** in the exam room. The **Defendant Porchia** continued to express her club crush and sexual desires for **Appellant**. In which led to the **Defendant Porchia** grabbing the Appellant by her shirt to kiss and caressing took place. The Defendant Cofield returned back with a box of Shipley's donuts as, if she did not witness the two kissing. Instead, she laughed and the sexual conversations continued. The **Defendant Porchia** expressed how she enjoyed performing oral sex. She demonstrated with a donut as to how she performed on her fiance Jay testicles. The Defendant Porchia expressed how she wanted to have a threesome with Jay but he was to traditional.

The Defendant Cofield admitted during the court evidentiary hearing (Doc#99-1 page 27 of 34 at #4) states "But, time will pass, and I forgot most of the time, I forget she back there, she be in for so long. so, a shift change. " I will go, and I'll leave, write a report."

The Appellant points out to the Court of Appeals that the Defendants Cofield testified that she would call for the Appellant but leave her in the room alone with **Defendant Porchia** so long until Shifts changed. She would leave to go write a report. A report that she failed to report that the **Appellant** was called to medical and left alone in a exam room with **Defendant Porchia** after long hour talking about sex.

On 01-24-2016 the defendant remained in medical for lengthy hours. Unlike, any other inmates with **Defendant Porchia** (no sick call request submitted.) The two kissed and caressed. The camera footage would have revealed the **Appellant** pulling the door closer in order for the camera footage not capture the two kissing and caressing as the **Defendant Porchia** instructed. The **Defendant Porchia** provided **Appellant** with her home address in order to write her being that she only worked weekends. In which **Defendant Porchia** knew that it was against policy. The **Defendant Porchia** testified during the August 25th, 2021 hearing that she provided the **Appellant** with her home address at the **Appellant's** request due to her depression and dog phobia. The **Appellant** request from the District Court a copy of the August 25th, 2021, hearing in order use for the Court of Appeals brief. **DENIED** However, the **Appellant** will use the Magistrate Judge "JEROME T. KEARNEY" document #140-0 page 10 of 16." Proposed finding and Recommendations states: "She admitted that she gave Plaintiff her address because Plaintiff appeared depressed wanted to return to the McPherson Unit. She received letters from Plaintiff after that, but did not keep them, and did not remember the contents of them. At one point, Porchia asked Plaintiff to stop writing her because it violated policy."

The Appellant will also use her court filed Interrogations that are governed by **Rule 33, Fed. R. civ.p**. **Appellant** can use to obtain information only from named parties of their agents. The Plaintiff invite all involved parties to review marked exhibits. The Defendant Porchia's answers, and inconsistencies.

Q. Interrogatory No.3 "Are Inmates allowed freely to walk out the secured barracks doors into medical and hangout in there for lengthy hours:?"

A. "No"

Q.   Interrogatory No.4 "In order for inmates to be seen by medical staff is there a sick call request procedure to follow?  If please explain."

A.   "Yes sick calls are submitted my inmates and the sick calls are triage and based on the triage, The sick calls are placed in order of importance and the inmates are called to be seen."

Q.  Interrogatory No.5:  "Are you familiar with Angela Richardson?"

A. "Yes"

Q.  Interrogatory No.8:  "Where you involved with Shalonda Johnson?"

A. "Yes"

Q.  Interrogatory No.11: "Why did you allow Richardson to spend lengthy hours with you in the medical exam room without a sick call request? "Please explain."

A. Objection: The interrogatory is overly board unduly vague and ambiguous as no context or date is provided.  Jevyish Hosp.Asso. v Struck Constr. Co., 77 F.R.D. 59 (D. Ky1978) Defendant further objects as this Interrogatory is argumentative and assumes facts not evidence.Stebbins v Boone Cnty.No.12-3022.2014 U.S. Dist LEXIS5649 (W. D. Ark. Jan 16, 2014). Subject to this Objection,I do not recall Plaintiff spending hours in a medical exam room." The **Appellant** reviewed cited case " Stebbins"in regards to a pro se inmate who continued to use profanity, misbehave in his proceeding and failed to act with civility.  The defendant case is inapposite of this case.

Q.  "Interrogatory No.12:  Did you ever provide Richardson with an address to write you on your days off being that you only worked weekends at Hawkins?"

A.  "At her request, and due to her depression, Yes."

Q. Interrogatory No.15: Why did you and Cofield hide the Plaintiff in the restroom on or around January 24th, 2016. Stebbins v Boone subject to this objection, I have no recollection of such event.:

A. The **Appellant** invites all parties to review document 99-1 page 25 of 34. The testimony of defendant Cofield at #14 states: "But, I can say, one time I want to say Captain Bilk came up in the infirmary with us one day, and was in ..... She was on her way going out, but she was ..... went in the bathroom, when she say going in the staff bathroom. But I just stood by the staff bathroom door." Because they was in the room she was looking up on Face book."

Q. Interrogatory "Did you ever talk about sexual acts in the presences of Plaintiff:"

A. "No" (view marked Exhibt Interrogatories)

The **Appellant** invites all parties to review Defendant Cofield Document 99-1 page 26 of 34 and #14 states: "They never; she never talked about nothing sexually." The Appellant invite all parties to review the inconsistent statement of both defendants that the District Court allowed to stand. (view document #99-1 page 30 of 34 at 3 Cofiled state "The only time Nurse Porchia talked about sex when I was around was when ..... one time Officer Coleman was in the room, but I want..... I want to say she was talking about something with her man for Valentine's Day or something, What she was going to do. I don't ...... I don't remember.

The **Appellant** points to the August 25th,2021 hearing that the Court DENIED to release Court transcript as to **Defendant Porchia** testified to that she did talk about sex in the presence of the **Appellant**. The **Defendant Porchia** did not deny the lengthy hours the **Appellant** spent alone with her in medical. As she contradicts herself. view Interrogatory question (11) eleven

The Plaintiff even expressed during the hearing that the **Defendant Porchia** also showed her body tattoo's to **Appellant** on Face book.

The **Appellant** points out to the Court of Appeals that according to the law a prior inconsistent statements that were made under oath at the trial hearing, or other proceeding or in deposition (interrogatories), that may be introduced to impeach a witness and also as substantive evidence of the truth of statement. Prior inconsistent statement as substantive evidence under Ark. R. Evid. 613 § 801 (d)(1)(i), if a defendant testifies and is subject to cross-examination, prior inconsistent statement evidence in civil case: Hawthorne v Davis, 268 Ark 131, 594 S.W. 2d 844 (1980).

On 01-30-2016, the **Appellant** was called out to medical again without a sick call request. The **Defendant Porchia** was in the medical exam room crying. She found out that her fiance Jay was entertaining other women on Face book. The Appellant talked with her about one hour being that other staff were in medical. Appellant returned back to her barracks.

On 01-31-2016, approximately 10:00 am. The **Appellant** went to pill call. The side effects later caused **Appellant** to experience dizziness, shortage of breath, and sickness. The **Appellant** was sent to medical by staff. The **Defendant Porchia** checked **Appellant** vitals and conducted an EKG exam. During the time the **Defendant Porchia** expressed how she was afraid of the **Appellant** written letters being caught in the mailroom. The defendant never asked the Appellant to stop writing her. The **Defendant** testified she only provided the **Appellant** her address due to **Appellant's** depression and dog phobia. The **Defendant** misused the **Appellant** medical issues and dog phobia as an excuse. The **Defendant** testified that she too was afraid of dogs. She failed to admit that her finance Jay had a dog. However, during the Appellant EKG exam. The **Defendant Porchia** misused her authority position and complimented the Appellant

stomach and breasts. The **Defendant Porchia** began to fondle **Appellant** breasts and touch **Appellant** clitoris. The **Defendant Porchia** also, kissed **Appellant** goodbye. The camera footage will reveal the posting officer was not outside the door as the Defendant testified too.

On 02-07-2016, the **Appellant** was seen due to a sick call request. The **Appellant** had a cold and **Defendant Porchia** treated her cold. Again, the **Defendant Porchia** expressed to the **Appellant** about the mail being caught in the mailroom. The **Defendant Porchia** continued to talk about her sexual desires towards the **Appellant**. The **Appellant** did not want to go back to medical. Instead she broke the silence to Lt. Poe. She advised the Appellant to write a witness statement. Lt. Poe opened up a PREA investigation. The Appellant suffered retaliation from prison officials and Warden Anthony Jackson due to breaking the silence. (view amended complaint document #8-0, Date filed 01-13-2017 page 1 of 11.)

# PROCEEDINGS

# IN THE UNITED STATES COURT

## EASTERN DISTRICT

ANGELA S. RICHARDSON                                        PLAINTIFF

v

WENDY KELLY, ET.AL                                          DEFENDENTS

DOCKET NO. 1:16-cv-00154

LITTLE ROCK, ARKANSAS

SEPTEMBER 18, 2019

10:45 A.M.

The Appellant will present the District Court Proceeding to the Court of Appeals in order to prove the number of court errors made during the Court hearings. The Magistrate and Chief Judge Baker allowed the **Defendant Cofield** to continously ignore the Court orders with an unexcused reason as to why? The Appellant points out that Defendant Cofield is related to the ADC Director Dexter Payne who is within the same surrounding residential area of the Magistrate Judge. However, according to filed document #86-1 page 3 of 10 " Proceedings" at 13 states: "The Court: Good morning. We hadn't received any response from you, and the Court was considering a default Judgment and the damages whereto ..... attendant there to"

(As follows at 17-21) states: "You know, I see you have a little girl with you ...... but, if you don't mind, just can you explain to me why you hadn't responded at all to the court or to ...... respond."

(As follows document 86 page 4 of l0 #4-25) States: "Ms. Colfield: the reason why I didn't respond was because I didn't know I had to respond. I .....I seen some papers, but I didn't know I was supposed to respond" back to those papers ..... etc. etc.

(As follow documents #86-1 page 5 of 10 at #l0) State: "Mr. Whiteside you've heard her statement made here" etc. ..... Document 86-1 at #23 states: "You know. on behalf of my client, I'm going to have to object to Ms. Cofield's reasoning. I don't believe that it presents good cause as to why the Court should set ..... she's in my understanding. is basically asking the Court to set the default judgment order that's already been entered, and she doesn't present good cause to do that. And there's no, you know, excusable neglect. And, so that's what ...... we'll raise that right now with the Court." (view Document #86-1 page 6 of 10 proceeding.)

(As follow page 7 and 8 of l0, Document #80-l #12 States: Ms. Cofeild. you are here.) You have given a ....... a reason. I'm not sure that I find that that's compelling. But, here is what I'm going to do, I'm going to continue this hearing to a date that will be arranged between all of you and the point of this. I'm not dismissing my order already basically finding you in default."

(View document #86-1)

# PROCEEDIDNG

## DOCUMENT #99-1 PAGES 1 0F 34

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF ARKANSAS

## NOTHERN DIVISION

ANGELA SCHUNCY RICHARDSON                                    PLAINITIFF

v

WENDY KELLY, et. al                                          DEFENTANT

DOCKET NO: 1-16-cv-00154

LITTLE ROCK, ARKANSAS

FEBRUARY 12, 2020

11:09 A.M.

The Appellant will continue by using the Court proceeding in this case stating with Document 99-1, dated file 07-08-21, page 5 of 34 at #13-22 states:

"The Court: All right ... The history of the case is on September the 18th, 2019 we covered for a evidentiary hearing. And the Plaintiff was not transported here. Her counsel was present. And after discussion ..... Also, Ms. Cofield showed, and unexpectedly. We determined to continue the hearing and asked Ms Cofield to see about retaining counsel. We got no response regarding that, but we did receive a response from Ms. Cofield on November 8th, 2019 indicating that she had not obtained counsel. And that, she's here today." (view document 99-1)

According to Document #99-1, page 6 of 34 at #8 States:

"The Court: Okay, all right. The factual summary of the case is this, the Plaintiff alleges that Ms. Cofield escorted her to the health unit on January 23, of 2016, where the Plaintiff and Co-Defendant's Porchia talked several hours about sexual relationships, and then, at one points Ms. Cofield and ..... and Porchia allegedly hid the Plaintiff in a closet to keep her from being returned to her cell."

The **Appellant** points to Cofield testimony Document 99-1 page 25 0f 34. Aforesaid: "But I can say, one time I want to say Captain Bilk came up in the infirmary with us one day, and was in ...... she was on her way out, but she was ..... went in the bathroom when she say going in the staff bathroom. But I stood by the staff bathroom door." The Appellant was not hid in a closet for the Court Records. The Defendant Cofield admits she stood by the staff restroom door." In which camera footage will capture her giving the **Appellant** signals to come out the staff restroom in order to return back into the exam room alone with Defendant Porchia.

The **Appellant** points to Doc. #99-1 page 8 of 34 at #l-7 states: Ms. Pryor: Yes, your Honor, there is actually that ...... the request made in one of your orders, Doc No. 71 is the clerk's default judgment against Ms. Cofield, that was entered on August 16th of 2019. So, today we ...... we are here requesting that Ms. Richardson be allowed to testify as to her damages related to Ms. Cofield only."

The **Appellant** move forward to the Court Proceeding as follows to page 32 of 34, Document 99-1 at #15-25 states: "Ms Cofield, this investigation, were you involved in .... in it, but they never had me to do anything. Like, they just terminated me. Like I wasn't ..... they didn't ask me no questions or nothing. They just said, "you're terminated for failure to protect." That was my reason of getting termination. and, now, I can't even..... I can't go back to work

with ADC. But, that's what they told me, you were terminated for failure to protect Angela Richardson.? (View pages 33 of 34 #9-17, doc. 99-1)

What I basically just told you. she was in there all the time, they was talking, talking about night club, on Face book. And you were present during those ..... Yeah I seen her..... you saw that? Yes Ma'am..... You saw that? and your were terminated for failure to protect Angela Richardson. Yes Ma'am."

The **Appellant** points to Cofield testimony doc. #99-1 page 27 of 34 at #4) Aforesaid: "But time will pass, and I forgot she back there, she be in for so long. So, a shift change. I will go and I'll leave, write a report." However, Cofield reports did not mention the **Appellants** lengthy hours alone with **Defendant Porchia** nor, the events that took place in medical as to when ever she called for the **Appellant.**

The **Appellant** will point to Court Document #140-0 Filed on 09-14-2021, pages 1 of 16. The Magistrate Judge Kearney "PROPOSED FINDING AND RECOMMENDATIONS INSTRUCTIONS."

According to document #140-0 page 6 of 16 at the top of the page States: "When Defendant again did not respond, the Court directed the Clerk to enter default against her on August 15, 2019, and default was entered on August 16, 2019 (Doc. Nos. 70, 71.)

"A hearing was scheduled on the Motion of Default Judgment on September 18, 2019. However, due to a mix up when the Arkansas Department of Correction Transportaion officers, Plaintiff was not transported to the hearing. "Surprisingly" however, Defendant Cofield appeared, pro se, at the hearing."

"Defendant Cofield appeared at the February 12, 2020 hearing pro se, and both she and Plaintiff testified concerning the allegation set forth in the Complaint. The Court then stayed

ruling on the Default Judgment Motion pending resolution of Plaintiff's claim against the other Defendant, Courtney Porchia."

The Appellant Richardson testified at both February 12. 2020. August 25, 2021 and on March 9, 2021 the **Defendant Courtney Porchia**, Attorney Odum conducted a zoom video with the **Appellant**."

The **Appellant** Zoom video visit testimony never changed nor was she inconsistent. However, the Magistrate Judge allowed state witness Ms. Susan Townsend, who altered a false report, withheld reliable evidence for as the March 2, 2016 a Audio Recording the Hawkins Unit level and CVSA results as to defendant Porchia touching the **Appellant** vagina during the EKG testing in order to discredit the **Appellant's** case.

The **Appellant** invite all parties involved to document #140-0, Filed 9-14-2021, page 12, and 14 of 16 F.SUSAN TOWNSEND EXHIBIT MARKED "TOWNSEND"

Ms. Townsend testified during the August 25, 2021 hearing that the **Appellant** admitted to her that she never kissed **Defendant Porchia**. She testified that **Appellant** said that they were horse playing.

TOWNSEND testified that the **Appellant** said that she made the story up about **Defendant Porchia**. Ms. Townsend testified that the **Appellant** said "I almost kissed Porchia." Townsend testified that the Appellant continued to change her story during the interview . Ms. Townsend testified that the Plaintiff said she was famous for her books. The audio recording will reveal that Townsend altered her report. The **Appellant** never told her any of the SWORN UNDER OATH TESTIMONY. The Appellant requested her Audio Recording Interview with Townsend, the Unit level report written by Lt. Poe and the true reason for Defendant **Porchia's** termination

16

DENIED (view exhibit "DENIED") The **Appellant** also submitted a grievance on SUSAN TOWNSEND unconstitutional violation, altered report, and false testimony (view exhibit "False Report")

The **Appellant** point to Magistrate Jude Kearney (Doc. No.#138 1. Defendant Porchia) states: "Defendant noted the inconsistencies between Plaintiff's testimony at the default judgment hearing and the statements given during the PREA investigation to Susan Townsend and the other witness accounts."

The **Appellant** points to the Magistrate Judge who heard the Appellant testimony. He did not rule or point out any inconsistencies from Appellant. Instead, he noted the Defendant's noted the inconsistencies. The **Appellant** proved by using court documents the defendant's inconsistencies throughout the events. For as Susan Townsend the Audio Recording will impeach her testimony. The other two (inmates) witness Amanda Beasley and Ariel McDaniel testimony were out of retaliation. Amanda Beasley who is a pen pal con-artist wanted Appellant to get her pills from Nurse Porchia and mail out her pen pals letter in order to by pass mail room security staff. Nevertheless, Ariel McDaniel who hated the Appellant after a two or three month relationship claimed during her testimony she had to help Nurse Porchia because. **Appellant** made her story up for money. This is a mother who caused her only son to be sentenced to prison for committing crimes with him. (view plaintiff Objection Brief Doc.#144-0, filed 10-04-2021.)

The **Appellant** account of events never changed from the dates she reported the Defendant's throughout the 2016 investigations, zoom video, or evidentiary hearings. The Appellant points to the Magistrate Doc. No.l38 #2.) states: "The Plaintiff Richardson "as of this date, Plaintiff has no filed a post-trial brief. At the August 25,2021 hearing. the Court gave the

parties ten days in which to submit post-trial briefs. in addition, on September 1, later than Friday, September 10, 2021. (Doc. No. 135").

The **Appellant** points to prejudice and due process violations being that the Magistrate Judge made his discussion showing bias and prejudice before, reviewing the **Appellant** objection brief. The **Appellant** points to the Magistrate page 14 of 116, Doc # 140-0 in the last paragraph States: "In this case, the Courts finds Plaintiff's testimony not credible, and that she consistently changed her story of events when questioned during the Internal Affairs Investigations. She Admitted to investigator Townsend that Porchia did not kiss her and touched her breasts only when she attached and removed the pads associated with the EKG test." The Magistrate Judge was not present as to the recording interview with Townsend nor was the audio played in court. Townsend altered a false report and misused her authority position against the **Appellant** during the Court hearing. The Appellant asked Townsend during the cross-examination as to why she didn't she bring the Audio Recording to prove the truth? Townsend replied, "There's thousand of Audio's and she was not going to look for one." Townsend knew that the Audio Recording would have proven the **Appellant** account of events never changed and truthfulness.

The **Appellant** points to Doc. 140-0, Magistrate Judge States: "Two separate credible witness testified to Plaintiff's unhappiness at the Hawkins Unit. her desire to be transferred and her false allegation against Defendant Porchia. Although the Court <u>DOES NOT</u> find <u>Defendant Porchia's</u> account of the events entirely believable, the evidence supports only a finding that any sexual activity was limited to inappropriate discussions between the employees and the inmate. Such conversation, however, do not rise to the level of an Eighth Amendment Violation" The Court cited case "<u>Freitas 109 F 3d at 1338</u> (internal quotation omitted.) However, "[O]nly severe

or repetitive sexual abuse.... rises to the level of an eighth amendment violation." and isolated incidents of inappropriate conduct do not constitute a constitutional violation.

The **Appellant** reviewed the Courts cited Case: "Freitas" "After a careful review of the record trial court did not err in finding that the relationship between Mr. Freitas and Ms. Howard was consensual and that Mr. Freitas welcomed it. The trial court found that although Ms. Howard initiated the relationship, both she and Mr. Freitas helped perpetuate it. Howard initiated the first kiss between the two, wrote M. Freitas' "hot sexy letters."

The **Appellant** did not initiated anything with **Defendant Porchia**. She aggressively came on the the **Appellant**, repetitively kissed the **Appellant**, she touched the **Appellant** breast and vagina while conducting her EKG. The **Appellant** established that her private constitutional rights were violated. The **Appellant** knew that breaking the silence would result into retaliation from prison officials.

The United State District Judge "Ms. Kristine G. Baker" to review. The **Appellant** points to Document #150-0, filed 03-31--2022, page 2 of 5 at the very bottom states: "Ms Richardson attaches several exhibits to her objections (Dkt.No.144 at 10-61.) the Court concludes that Ms. Richardson has not explained sufficiently why the exhibits that she now seeks to presents including affidavits, were not presented at the evidentiary hearing.

On June 8, 2021, the Court notified the parties that it would conduct an evidentiary hearing on August 25, 2021 (Dkt. Nos. 126, 132) The Court gave Richardson ample time to prepare for the evidentiary hearing and to gather her evidence."

The **Appellant** points to the law being that the Magistrate Judge unassigned her council after, the February 12, 2020, default judgment hearing. The **Appellant** point to the Civil Rule Procedures that she DID NOT met the listing factors including factual and legal complexity of

19

issues, ability to investigate facts and present claims, and existence of conflicting testimony. The Appellant is a pro se inmate and during the time of her case the unit suffered high volume of covid quarantine. The **Appellant** did not have freedom to talk with witness nor collect all evidence for the complexity of her case. The **Defendant Porchia** was/is represented by a team of professional attorney's . The **Appellant** was/is DENIED valid evidence that would have helped her case such as; the Unit level Report, Camera footage, Audio Report or the fact that Susan Townsend (IAD) failed to use the CVSA testing on both defendants to present their results in Court.

The **Appellant** points out that the defendant were both terminated after, she broke the silence. The Defendant Cofield was terminated for failure to protect the **Appellant**. She continued to call the **Appellant** to medical with out sick calls request. The Defendant could not produce any sick calls request nor did the defendants lodge anything in their records.

The **Appellant** refers to the Supreme Court and Third Circuit recognized that this type of behavior assumed responsibility for the Plaintiff care, protection custody and control. Among the duties assumed by Defendant was the duty to refrain from any sexual contact with the Plaintiff. The statue makes clear, the incidents is not social or personal, it is a custodial relationship in which one party relies on the other for care and protection. The Court claims that there were only sexual conversation discussed with the **Appellant**. The Appellant proved that the sexual conversations eventually escalated to a number of days and over (8) eight hours alone in a private room with the defendant Porchia, without sick call request. The defendant provided the **Appellant** with her private home address as well. Hypothetically' thinking if this was a male nurse having security call out a female inmate without sick call request reasoning or reported records to talk about sex and in medical private rooms for over eight or more hours until, the

shift changed. This case would have been viewed differently. According to the law the sexual orientation does not matter. The Plaintiff cited case!

"MATHIE v FRIES 935. F. SUPP 1284, 13707 (E.D.N.Y.) (1996)

Deputy Sheriff Johnson discovered that Mathie knew the unlisted home number of Fries and his home address. Johnson questioned Fries about how this could have happened but never received a credible explanation for that strange circumstance. In addition, Johnson testified that Fries could not locate any of the documents he requested. Also, Fries could not explain what took place in his office during the numerous and lengthy Mathie visits.

See People v Taylor 75 N.Y.2d 277, 552 N.Y. S 2d 833, 552 N.E. 2d 131 (1990)

However, such evidence is admissible in all instances. For example " expert opinion is in admissible when introduced merely to prove that a sexual assault took place..... or to bolster a witness' credibility ..... In such instances the potential valve of the evidence is out weight by undue prejudice to the defendant or interference with province of the jury. " Bennett, 79 N.Y. 2d at 473, 583 N.Y.S. 2d at 285.

The defendant produced Gaetano Disilvestro, also known also known as Thomas Micheal Rogers, an incarcerated inmate presently security 8 to 16 years. Disilvestro testified that in January thought March 1990 he was as inmate in the SCCF, charged with attempted burglary and arson. He stated that he is known to be a roughneck in the jail .... (and) was causing trouble beating up a lot of people. He was put in bull pen to cool off. Then, according to Disilvestro, they concocted a plan, which was Mathie's idea as follows:

A. And he told me you know, he wanted to get Fries and I wanted to get Fries, and we concocted a little plan.

Q. What was the plan.

A.  Well, it was his idea, it wasn't my idea because I'm not with kind of thing We could

set officer Fries up and say that he assaulted us, say that we could have had it

worked out, go to totally destroyed our lives and so forth.

Q.  Anything else besides what?

A  I don't know what you mean.

Q  Well, what was it that you were to tell Ms. Filoy how as Roy Fries to destroy your life

A.  Saying that he sexually assaulted us.

Q.  What else do you remember about the conversation?

A.  That was basically it, you know.

Q.  Did he, mention anything to you about a lawsuit?

A.  Oh, of course, no question. I would collect a lot of money. You Know, I can't

get into something like that, etc.

    (Tr. at 737-738)

The **Appellant** references to MATHIE v FRIES'S as to state inmate witness (McDaniel

and Beasley.) In this case Inmate Disilvestrotes ~~satisfied~~ testified that on the day he had this

"Conversation" with Mathie in the bull pen. Further, he stated that Mathie talked openly about

this "Scheme"in 9 manner which allowed the three or four other inmates to hear the

Conversation. The Court ruled in Mathie Favor being that his account of events did not change

nor did the defendant keep records of the lengthy time alone with the Plaintiff. In which is similar

situated to **Appellant** "Richardson: case.  Her account of events did not change nor were there

any records of sick calls submitted by the Appellant on the lengthy days she spent alone for hours

with Defendant Prochia.  The **Appellant** did not show deception as to why state witness

Townsend asked if Nurse Prochia touched her vagina during the CVSA testing? The IAD investigator Townsend failed to present that to the Court as she present the testing results. The Magistrate Judge listened to all parties (defendants and state witness) testify as to the Hawkins Unit being small and laid back. However, it is still a prison the doors are secured. Inmates have to be let out by prison staff. There is no excuses as to the size and environment of any prison unit. The **Appellant** used Court documents defendants testimonies. and defendant Porchia's interrogatories to prove the errors that took place in this case.

In references to MATHIE vs FRIES cited. "Significantly, the Court find that inmate Mathie was a private visitor to the Fries office more frequently and for longer periods of time than any to other inmate. On this subject, Fries testified follows:

Q. It's a fact, it is not, that during the period from December to April, December 89 Maurice Mathie was in your presence privately in your office more frequently than any other Prisoner?

A. He was sent down to security probably much more than any inmates, yes.

[935 F Supp.1288] "In addition to the Plaintiffs visits to the the Fries office that were logged in the Court finds that there were other visits by the Plaintiff that were not record anywhere.

Q. And one or more these visits was an hour long?

A. "Yes"

Q. "And that was more time than you would spend with most prisoners, isn't that so"

"Mr. Cabble: Objections"

Shortly, after the **Appellant** Default hearing and the **Appellant** Attorney crossed examined the defendant Cofield for being terminated in regards to failure to protect the **Appellant**. Another order was filed to withdraw. (View exhibit "Motion" document 89)

The **Appellant** points to filed document 138 page 3 and 4 of 10. The **Defendant Porchia's** Attorney "Odum" down played her clients inconsistencies statement that were asked by **Appellant** interrogatory questions. In the second paragraph states: "Ms Porchia testified that they did allow Plaintiff to spend extended time in the infirmary, but that other inmates also did from time to time due to the laid - back atmosphere at the Hawkins.

Aforesaid: The Appellant Interrogatory No. 11: Q. Why did you allow Richardson to spend lengthy hours with you in medical exam room without a sick call request? Please explain.

A. "Objection to this, I do not recall Plaintiff spending hours in medical exam room"

"Cofield (co-defendant)

States: "But time will pass,and I forgot ..... most of the time. I forget she back there, she be in for so long. So, a shift will change."

However, the Courts over ruled ADC reasoning for terminating Defendant Colfield. Although, she admits as to calling for the **Appellant** and leaving her in the room alone with **Defendant Porchia** until shift changed. Instead, the Magistrate Judge and Judge Baker points to Mrs. Susan Townsend profession as a former police officer and IAD investigator. Someone who altered the **Appellant** report. She failed to present the Audio Recording from the March, 2016 interview. She failed to present the Unit level report and the CVSA results as to **Defendant Porchia** touching the Appellant clitoris (vagina) during the EKG exam.

Cited Case: Farmer v Brennan

The **Appellant** points to affidavits that are written by several inmates who witness **Defendant Porchia** behaviors towards the **Appellant** at Hawkins Unit. (View doc #144-0 exhibit) "Behavior" pages 22 any of 23 of 61). The **Appellant** also filed "MEMORANDOM" as to requesting the Audio Recording from 2016. The Director Payne and Internal Affairs DENIED. **Appellant** copies due to Townsend violations against the **Appellant**. In which will impeach her as well. The **Appellant** submitted a copy of her exhausted grievances in regards to Susan Townsend false testimony and altered report. (View doc. #145-0 page 5 of 5 marked as exhibit "Grievances")

## CLOSING

The **Appellant** asking the Court of Appeals to carefully review the number of errors made by the District Court in her case. The **Appellant** did not contradict herself at any time though out the 2016 interview upon the closing of this case. The **Appellant** document #8-0 dated filed 01-13-2017, pages 8 of 11 is the first witness statement at the Hawkins Unit written in 2016 for Lt. Poe in her presence. The **Appellant** did not plan this incident. She reached out for help shortly after **Defendant Porchia** came on to her in medical. The complaint was ignored by Warden Jackson and Major Cobbs. (view marked exhibit "Request") The District Court allowed false testimony of two state witness and policy violation of IAD Investigator Susan Townsend . A former officer altered report stand. The Judge was not present during Townsend interview with **Appellant**. He took their words without reliable evidence verses listening to the audio report. **Appellant** refused to do favors for Beasley. Someone who testified that she was afraid of **Appellant.** And prison officials separated them. Beasley is not on **Appellant** separation list. The Appellant filed E-mails and picture Beasley sent her upon being released. Inmate McDaniel retaliatory and malice intentions are documented with prison officials. Several inmates filed affidavits who witness McDaniel evil attempts towards **Appellant.** (view marked exhibit "McDaniels" page 13,14, 15 and 16 of 61.)

Aforesaid: The Appellant case did not meet the four factors in evaluating the **Appellant's** request as in Johnson v Williams, 788 F. 2d 1319, 1322 (8th cir 1986)

(1) The factual and legal complexity of the case:

(2) The **Appellant** ability to investigate facts:

(3) The presence or absence of conflicting testimony; and

(4) The **Appellant** ability to present this claim.

(view court order marked as exhibit "Order")

The Court prior to this only appointed council to assist Appellant only for the purpose of serving the defendants.    (view Marked exhibit "Serve")  However, what led to this civil suit, upon the Appellant returning back to the McPherson Unit.  She explained to her fellow inmate Lisa Murphy all the events took place.  Inmate Murphy advised her to write a grievance on defendant's file a lawsuit against Defendants.  (view exhibit "Murphy")

The **Appellant** is asking all parties involved to honor the law in her case.  The **Appellant** wrote a letter to the Court of Appeals due to the delay and denials requesting legal documents. She inquired about her "Notice of Appeal."  The District court delayed months after the ruling or **Appellant's** Case.  The Appellant is respectfully asking the court of appeals for a reversal of the District Court Ruling in this case.

Thanks for your time.

Respectfully submitted.

_Angela S Richardson_,
Angela Richardson          *Pro, se*
ADC# 712575

KALEENA R WATSON
NOTARY PUBLIC-STATE OF ARKANSAS
PULASKI COUNTY
My Commission Expires 02-06-202
Commission # 12700

Notary: Kaleena R. Watson
County: Pulaski

My Commission Expires: 02-06-2027

This was subscribed before me on 2nd November, 2022